**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| JEANNINE SPENCER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:23-CV-306-RHH |
| | ) |
| MARTIN O'MALLEY,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Jeannine Spencer's appeal regarding the denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (the "Act"). The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF No. 7.) The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence. Based on the following, the Court will reverse the Commissioner's denial of Spencer's application and remand for further evaluation.

**I.   Background**

The Court adopts the statement of facts set forth in Spencer's statement of facts (ECF No. 9-1) and Defendant's response (ECF No. 12-1). Together, these statements provide a fair description of the record before the Court. Specific facts will be discussed as needed to address the parties' arguments.

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley shall be substituted for Kilolo Kijakazi as the defendant in this suit. *See* 42 U.S.C. § 405(g).

On or about December 28, 2020, Spencer applied for DIB, alleging that she has been unable to work due to disability since December 28, 2020. (Tr. 11, 53, 163-164.) Spencer alleged disability due to Sjogren's Syndrome, Mixed Connective Tissue Disease, Peripheral Small Fiber Neuropathy, Fuchs Dystrophy/dry eye syndrome, and Polyarthritis. (Tr. 54.) Her application was initially denied and she filed a request for Hearing by Administrative Law Judge (ALJ). (Tr. 92-93.) On February 3, 2022, the ALJ held a hearing on Spencer's claim. (Tr. 30-52.) Spencer was represented by counsel at the hearing, and an impartial vocational expert testified. *Id.*

In a decision issued on March 18, 2022, the ALJ found Spencer was not disabled as defined in the Act from the alleged onset date through the date of decision. (Tr. 24.) On April 18, 2022, Spencer filed a Request for Review of Hearing Decision with the Social Security Administration's (SSA) Appeals Council. (Tr. 155-157.) On January 11, 2023, the Appeals Council denied Spencer's request for review, and adopted the ALJ's decision in full. (Tr. 1-5.)

## II.     Standard for Determining Disability Under the Act

The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."  42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

2

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v).

**III.   The ALJ's Decision**

Applying the foregoing five-step analysis, the ALJ here found that Spencer had not engaged in substantial gainful activity since December 28, 2020, the application date. (Tr. 13.) Next, the ALJ found that Spencer has the following severe impairments: Sjogren's syndrome, rheumatoid arthritis, and peripheral neuropathy. (Tr. 13.) The ALJ found that Spencer's depression, insomnia, migraines, Fuchs dystrophy, hypercholesterolemia, hypothyroidism, and

3

macular edema were non-severe physical impairments, and Spencer's fibromyalgia was not a medically determinable impairment. (Tr. 13-14.)

The ALJ determined that Spencer did not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. The ALJ also determined that Spencer had the residual functional capacity to perform light work with non-exertional limitations. Specifically, the ALJ found that claimant could perform light work except for "occasional climbing of ramps and stairs but no climbing of ladders rope and scaffolds, occasional stooping, kneeling, crouching and crawling, frequent handling and fingering, and only occasional exposure to extreme temperatures." (Tr. 15.) The ALJ found that Spencer was capable of performing past relevant work as a Senior Coding Analyst and medical record coder, and that work did not require the performance of work-related activities precluded by her residual functional capacity. (Tr. 23.) Therefore, the ALJ concluded that Spencer was not disabled, as defined in the Act, from December 28, 2020, through March 18, 2022. (Tr. 24.)

## IV.   Standard for Judicial Review

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court must affirm the Commissioner's decision if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole.  *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197,

4

229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942. *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the Court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

**V.     Discussion**

The crux of Spencer's brief is that although the ALJ found her medically determinable mental impairments not severe at Step Two, she found Spencer has mild impairment in each of the four broad mental function areas, and yet, assessed no mental limitations in Spencer's RFC. Spencer contends that her mental capacity was impacted by her impairments, and the ALJ's decision to impose only a physical RFC, not a mental RFC, was not supported by substantial evidence. Notably, Spencer does not argue that finding her mental impairments to be non-severe at Step Two was error; rather, she contends that her non-severe impairment of depression,

5

combined with the mental symptoms she experienced as a result of her physical impairments and medication side effects, resulted in her inability to perform her highly skilled past work as a senior coding analyst and medical record coder. Therefore, the ALJ failed to appropriately evaluate her mental limitations before finding she could perform her past relevant work.

In response, the Commissioner argues that the ALJ's step-two finding was supported by substantial evidence and that the ALJ properly assessed the medical opinion evidence. The Commissioner makes no attempt to address Spencer's arguments regarding the skill level required for her past relevant work compared to the skill level accounted for in the four broad mental function areas.

Spencer makes additional arguments, but because reversal is warranted on this point of error, the Court need not address the remaining points raised.

**A. Step Two Standard and the ALJ's Step Two Findings**

At Step Two, the ALJ found that only Spencer's Sjogren's syndrome, rheumatoid arthritis, and peripheral neuropathy were severe impairments. (Tr. 13.) The ALJ concluded that depression, insomnia, migraines, and other impairments did not cause more than minimal limitation in Spencer's ability to perform basic mental work activities and therefore were non-severe impairment. (Tr. 13-14.)

When evaluating the severity of a claimant's mental impairments, an ALJ must first "evaluate[s] [the claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [the claimant has] a medically determinable mental impairment." 20 C.F.R. § 404.1520a(b)(1). The ALJ "then rate[s] the degree of functional limitation resulting from the impairment(s)" in four broad functional areas known as the "Paragraph B" criteria. *See* § 404.1520a(b)(2); *see, e.g.*, *Roades v. Astrue*, 861 F. Supp. 2d 983, 992 (E.D. Mo. 2012). As noted

6

above, the criteria are as follows: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3). The ALJ rates the criteria using a five-point scale of none, mild, moderate, marked, and extreme. *See* § 404.1520(c)(4). If the ALJ rates the claimant's mental impairments as "none" or "mild," then the ALJ will generally conclude that the mental impairments are non-severe, unless the evidence indicates there is more than a minimal limitation in the claimant's ability to perform basic work activities. § 404.1520a(d)(1).

Here, at Step Two, the ALJ found Spencer had a mild limitation in each of the four paragraph B criteria. (Tr. 14.) In her analysis, the ALJ noted that Spencer was not seeking or receiving mental health treatment other than through her primary care physician. She told her doctor that her depression was well-controlled, and her symptoms were under good control. (Tr. 298, 366, 405.) During her psychological consultative exam, Spencer reported her depression started in her 20s when she was put on Prozac and "that seems to be pretty much taken care of it," and though she did have some ups and downs, she was "overall pretty well." (Tr. 14, 376.) The ALJ found the evidence does not indicate there is more than a minimal limitation in the claimant's ability to do basic work activities based on Spencer's medically determinable mental impairments.

After finding mild limitations in each of the four categories, the ALJ explained:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. **The mental residual functional capacity assessment used at steps 4 and 5 of the sequential process requires a more detailed assessment.** The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(Tr. 14-15 (emphasis added)). As the ALJ acknowledged, a step two determination of "non-severe" is not necessarily the end of her inquiry. Instead, when crafting the RFC, the ALJ must also

7

consider the combined effect of all of the claimant's impairments, without regard to whether any one impairment would be sufficiently severe to be disabling if considered separately. *Presson v. Saul*, Case No. 4:20 CV 516 SRW, 2021 WL 2554215, at *4 (E.D. Mo. Jun. 22, 2021) (internal citations omitted).

### B. Mental RFC Evaluation and Mild Limitations in Basic Work vs. Skilled Work

Pursuant to the regulations, when the ALJ found Spencer's mental impairments to be non-severe, she found the impairments did not significantly limit plaintiff's ability to do <u>basic</u> work activities such as understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1522, 416.922. "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." Soc. Sec. Ruling (SSR) 96-8p.

The SSA has identified 14 basic mental abilities needed for any job, Program Operations Manual System (POMS) DI 25020.010(B)(2)[2], specific aspects of which are critical for performing unskilled work. *Id.* DI 25020.010(B)(3). The agency recognizes that semiskilled and skilled work require the 14 basic mental abilities noted above and often present "an **increasing requirement for understanding** and **memory** and for **concentration** and **persistence**, e.g.: the ability to: understand and remember detailed instructions, carry out detailed instructions, and set realistic goals or make plans independently of others." *Id.* DI 25020.010(B)(4) (bold in original).

---

[2] See https://secure.ssa.gov/poms.NSF/lnx/0425020010 (last visited Feb. 12, 2024).

8

The agency recognizes that in semiskilled and skilled work "[o]ther special abilities may be needed depending upon the type of work and specific functions it involves." *Id.*

Although the ALJ determined that Spencer had mild limitations in understanding, remembering, and applying information; mild limitations in social interaction; mild limitations in concentration, persistence, or pace; and mild limitations in adapting and managing oneself, she did not include any mental limitation in the RFC. In making an RFC assessment, the ALJ explained:

> Although she testified to significant brain fog, anxiety and depression, the record does not support more than a mild limitation in mental functioning. She testified that she takes medications for depression and it is well controlled with no need for increase in dosage, and she is not taking any medications for anxiety. She describes situational issues that sometimes affect her mental symptoms. She says she is able to engage with her providers regarding her care, use apps on phone to order groceries, and has maintained her nursing license. Based on the complaint from neuropathy in her hands as well as chronic pain, the undersigned has added limitations to hands and postural. Her past work is very skilled and Sedentary, and with her mental not severe, past work is not precluded. Further, given the frequency of her infusions, limitations were included in the residual functional capacity, which the vocational expert indicated would not preclude work.

(Tr. 23.) In her briefing, Spencer criticizes the ALJ's failure to explain how Spencer's mental limitations would impact her ability to carry out her highly skilled past work. This argument is well taken. Though an ALJ is not required to discuss each specific piece of evidence in the record when making her disability determination, she must still provide a "logical bridge" between the RFC and the evidence. *Holdeman v. Kijakazi*, Case No. 20-cv-729-NKL, 2021 WL 6062368, at *4 (W.D. Mo. Dec. 22, 2021) (citing *Black v. City of Apfel*, 143 F.3d 383, 386 (8th Cir. 1998); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7).

At the hearing, the vocational expert testified that Spencer's past relevant work fell under two Dictionary of Occupational Titles ("DOT") classifications, medical records coder and senior coding analyst. (Tr. 23, 47.) Both positions are skilled sedentary jobs with a specific vocational preparation level ("SVP") of 7. *Id.* The ALJ found that Spencer's RFC rendered Spencer capable

9

of performing this past relevant work based on the RFC determination. (Tr. 24.) However, there is no discussion in the ALJ's decision or in the hearing colloquy between the ALJ and the vocational expert regarding the increased mental abilities required to perform the job (beyond the general statement of an SVP of 7) and no specific discussion or finding that Spencer has mental abilities greater than those necessary to perform basic mental work activities.

Perhaps Spencer has retained the mental abilities to perform her work as a medical records coder and analyst. However, this court does not know what actual, specific mental abilities, if any, beyond the basic mental abilities required to perform unskilled work, are required for Spencer's past work, and the ALJ and the Commissioner have not addressed the issue. "[R]emand is appropriate where the ALJ's factual findings, considered in the context of the record as a whole, are insufficient to permit the Court to conclude that substantial evidence supports the ALJ's decision, or where the ALJ fails to consider or discuss a crucial issue." *See Betty H. v. Berryhill*, No. 18-CV-1105 (LIB), 2019 WL 4898465, at *3 (D. Minn. Aug. 7, 2019). It is the duty of the ALJ to assess the RFC and to compare a claimant's RFC with the mental demands of a job, and the court may not substitute its judgment for that of the Commissioner. Therefore, the Court will remand for a proper evaluation of Spencer's mental abilities and how they compare to the mental abilities required to perform her skilled past relevant work.

### C. Evaluation of Dr. DiValerio's Opinion

Spencer also argues that the ALJ erred in her evaluation of the medical opinions of Spencer's rheumatologist, Richard DiValerio, M.D. The Court will only briefly address this issue, as the ALJ will have the opportunity on remand to revisit his and other medical opinions.

Dr. DiValerio completed a Medical Source Statement-Mental dated September 30, 2021. Dr. DiValerio wrote that Spencer had mental diagnoses of brain fog and fatigue which caused a

lack of focus, and checked boxes to indicate this resulted in mild, moderate, and marked limitations in the mental activities listed in the form. (Tr. 412-414.) Two months later, on November 30, 2021, Dr. DiValerio completed an identical form, but filled it out differently. (Tr. 453-454.) This time, Dr. DiValerio listed mental diagnoses of brain fog, fatigue, rheumatoid arthritis, and CVA. He did not circle that she experienced a lack of focus; instead, he circled drowsiness and weakness as applicable side effects. (*Compare* Tr. 412-413 *and* Tr. 453-454.) For some of the limitations he found to be mild or moderate in September, he found to be moderate, marked, or extreme in November. (*Id.*)

The ALJ found Dr. DiValerio's opinions not persuasive. In discounting his opinions, the ALJ stated they were not supported by his own office or progress notes, stating that "In the first [medical source statement] dated September 30, 2021, he noted she experienced brain fog and fatigue along with side effects from medication, though none of his treatment notes reflected such." (Tr. 22.) The undersigned agrees with the ALJ's finding that Dr. DiValerio's opinions regarding marked and extreme limitations in Spencer's mental abilities are not supported in the record. However, the ALJ is incorrect in suggesting Dr. DiValerio's records did not document Spencer's brain fog—it was discussed at multiple appointments before Dr. DiValerio provided his medical source statements. (Tr. 422, 424, 440, 443.) Therefore, to the extent the ALJ's assessment regarding the supportability of Dr. DiValerio's opinion was based on inaccuracies regarding his records, the ALJ will have the opportunity to reevaluate his opinions on remand.

Upon reconsideration of appropriate evidence, the ALJ may well determine that Spencer is not disabled. The Court is aware that upon remand, the ALJ's decision as to non-disability may not change after properly considering all evidence of record and undergoing the required analysis, but the determination is one the Commissioner must make in the first instance. *See Buckner v.*

11

*Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) (when a claimant appeals from the Commissioner's denial of benefits and the denial is improper, out of an abundant deference to the ALJ, the Court remands the case for further administrative proceedings); *Leeper v. Colvin*, No. 4:13-CV-367 ACL, 2014 WL 4713280 at *11 (E.D. Mo. Sept. 22, 2014) (ALJ duty to make disability determination).

## VI. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **GRANTED** in part and **DENIED** in part. (Docs. 1, 9.)

**IT IS FURTHER ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings.

**IT IS FURTHER ORDERED** that a Judgment of Reversal and Remand will be filed contemporaneously with this Memorandum and Order remanding this case to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. § 405(g), sentence 4.

Dated this 12th day of February, 2024.

_____
RODNEY H. HOLMES
UNITED STATES MAGISTRATE JUDGE